**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NORTH AMERICAN ELITE INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | No. 19 C 6528 |
| v. | ) ) | Judge Sara L. Ellis |
| MENARD INC., | ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

Plaintiff North American Elite Insurance Company ("NAE") contracted with Defendant Menard Inc. to provide excess insurance coverage with liability limits of $25 million (the "NAE policy"). Menard could only reach this coverage if it exhausted its self-insurance of $2 million and excess coverage of $1 million, insured by Greenwich Insurance Company ("Greenwich"). Menard settled a negligence action for $6 million, leading NAE to pay $3 million of the settlement. NAE subsequently filed an action in this Court, alleging that Menard should have settled the case when it received a settlement demand of roughly $2 million. NAE brings claims for breach of contract and breach of the duty to settle. NAE also seeks a declaration that it does not owe a duty to indemnify Menard or pay any portion of the $6 million settlement. Menard filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court finds that a policyholder does not owe an excess carrier a duty to settle, and NAE has not plausibly alleged an express breach of contract claim. Further, NAE is not entitled to declaratory relief. Therefore, the Court grants in part and denies in part Menard's motion to dismiss [13]. NAE may proceed with its breach of contract claim to the extent that it relies on an implied duty of good faith.

**BACKGROUND**[1]

Menard maintained multiple layers of insurance between November 1, 2015 and November 1, 2016. Its primary layer was self-insurance for bodily injury in the amount of $2 million per occurrence and allowed Menard to retain the ability to control and direct the investigation, defense, and settlement of general liability claims within this layer. Above its primary insurance, Menard had two excess and umbrella coverage insurance policies for general liability bodily injury claims. Greenwich issued an excess policy to Menard with a $1 million per location and per occurrence limit of liability for bodily injury claims in excess of the Menard self-insured retention (the "Greenwich policy"). The Greenwich policy included a "Self-Insured Retention Endorsement," which provided that Menard retained a $2 million per occurrence self-insured retention for bodily injury claims. The Self-Insured Retention Endorsement stated:

> You shall be responsible for the investigation, defense and settlement of any claim or 'suit' for damages within the Self-Insured Retention, and for the payment of all 'Allocated Loss Adjustment Expenses.' You shall exercise utmost good faith, diligence and prudence to settle all claims and 'suits' within the Self-Insured Retention.
>
> We shall have the right but not the duty to participate with you at our own expense in the defense or settlement of any claim or 'suit' seeking damages not exceeding the Self Insured Retention. In the event of a claim or 'suit' which in our reasonable judgment may result in payments, including 'Allocated Loss Adjustment Expenses,' in an amount in excess of the Self-Insured Retention, we shall have the right and the duty to defend and may, at our sole discretion, assume control of the defense or settlement of such claim or 'suit.' You will continue to be responsible for the payments of the Self-Insured Retention.

Doc. 1 ¶ 18.

---

[1] The facts in the background section are taken from the complaint and the exhibits attached thereto and are presumed true for the purpose of resolving Menard's motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Beyond the Greenwich policy, NAE issued a commercial umbrella liability policy to Menard with liability limits of $25 million. If Menard exhausted the scheduled underlying insurance and the total limits of other insurance, it would trigger the NAE policy. The NAE policy included a provision regarding Menard's maintenance of scheduled underlying insurance, which listed Menard's self-insured retention and the Greenwich policy, as well as the relevant limits of both. With respect to settlement, the NAE policy provided that Menard must "cooperate with [NAE] in the investigation or settlement of the claim or defense against the 'suit.'" Doc. 1-2 at 20. In suits claiming damages for bodily injury, property damage, or personal and advertising injury, NAE had the "right and duty to defend [Menard]" when the underlying insurance or other insurance "have been exhausted by payment of 'loss.'" *Id.* at 8. In all other suits, NAE had the "right, but not the duty, to participate in the defense of any 'suit.'" *Id.* at 9. If NAE did assume the defense, it would "settle the 'suit' as [i]t deem[ed] expedient." *Id.*

An individual brought a negligence action against Menard and one of its employees based on an incident that occurred at a Menard store on August 10, 2016. Menard controlled the defense of the action through its retained defense counsel. Greenwich and NAE never controlled the defense. On May 3, 2019, five days before a scheduled mediation, NAE informed Menard that it encouraged Menard to settle the claim at least up to $2 million. On June 3, 2019, the day before trial was scheduled to begin, the plaintiff made a $1.985 million demand to settle. Greenwich was willing to pay any potential amounts due to any erosion of Menard's $2 million self-insured retention. Menard did not respond to the demand and proceeded to trial. NAE first learned of the demand on June 10, 2019, in an email from Menard's defense counsel. The email stated that the judge was "not pleased that Menards did not respond to the $1.985 settlement

3

demand in response to Menards request for a demand under the $2 million SIR." Doc. 1 ¶ 38. The email also said that the judge encouraged the parties to engage in settlement discussions, but there had not been any further discussions. Two days later, NAE wrote to Menard, demanded that Menard accept the settlement immediately, and instructed Menard that its failure to settle would be in bad faith. NAE, Menard, and Menard's claim handlers subsequently held a conference call in which NAE continued to demand that Menard settle below the NAE layer. In response, Menard's claim handlers expressed they would not settle because they believed Menard would obtain a defense verdict. However, Menard's defense counsel advised Menard that she did not believe Menard would receive a defense verdict and Menard should therefore seek to settle before a verdict. NAE expressed to Menard that if it refused to settle, it should at least accept a high-low agreement to protect Menard from exposure given NAE's position that it would not be liable for any verdict that reached NAE's layer due to Menard's failure to settle within its self-insured retention.

Prior to the verdict, Menard agreed to a $6 million/$500,000 high-low agreement with the plaintiff. The jury returned a verdict of $13 million, which was reduced by 5 percent due to the plaintiff's comparative negligence. The court vacated the judgment pursuant to the $6 million settlement, as a function of the high-low agreement. Menard subsequently requested that NAE fund the settlement amount exceeding $3 million. NAE informed Menard that it did not believe it had any obligation to fund the settlement due to Menard's unreasonable and bad faith failure to settle, however, it would pay the amounts requested under full reservation of rights and Menard's agreement that payment would not waive NAE's right to seek reimbursement. Menard agreed to those terms.

NAE now brings an action against Menard, alleging that Menard breached certain duties that it owed NAE as its excess carrier by failing to reasonably settle. NAE seeks a declaratory judgment stating: (1) it is not obligated to pay any of the settlement or other amounts of loss, and (2) it is entitled to reimbursement for the amounts it paid in the underlying suit. NAE contends that Menard's failure to accept the $1.985 million demand gives rise to a breach of contract claim, as well as a claim for a breach of the common law duty to settle.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

In its complaint, NAE states claims for breach of contract and breach of the duty to settle. NAE also seeks related declaratory relief. Menard moves the Court to dismiss all three claims for the following reasons. First, Menard argues that NAE asks the Court to impose a contractual duty of good faith on Menard that is absent from the NAE policy and instead appears in the Greenwich policy. Menard also argues that the Court cannot imply a duty of good faith because

5

such duty is only a gap filler and the NAE policy contemplated NAE's rights in settling lawsuits. Second, Menard moves for dismissal of the duty to settle claim because no Illinois court has found a policyholder to owe an excess carrier a duty to settle. Finally, Menard argues that declaratory relief is unavailable because it is duplicative of NAE's other claims and based on the same faulty premises underlying those claims.

## I. Breach of Contract

In its breach of contract claim, NAE puts forth two theories of liability based on Menard's failure to accept the $1.985 million settlement demand. First, NAE contends that "Menard owed a contractual duty to NAE to 'exercise utmost good faith, diligence and prudence to settle all claims and 'suits' within the Self-Insured Retention.'" Doc. 1 ¶ 76. Second, NAE alleges that "there is an implied duty of good faith and fair dealing in the NAE Policy that requires Menard to act reasonably in settling suits where it is in control of the litigation." *Id.* ¶ 77. Menard moves to dismiss the breach of contract claim on both grounds. The Court will address each theory and the related arguments in turn.

### A. Express Duty to Exercise Good Faith in Settling Disputes

Menard first argues that NAE's breach of contract claim fails because NAE's allegations conflict with the contract provisions on which they are purportedly based. In evaluating a motion to dismiss, the Court reviews the complaint and exhibits attached to the complaint. "When an exhibit incontrovertibly contradicts the allegations in the complaint, the exhibit ordinarily controls, even when considering a motion to dismiss." *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013). The Court is not bound by a plaintiff's characterization of an exhibit and may independently examine the document to form its own conclusions. *See Forrest v. Universal Sav. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).

Here, NAE contends that "Menard owed a contractual duty to NAE to 'exercise utmost good faith, diligence and prudence to settle all claims and "suits" within the Self-Insured Retention.'" Doc. 1 ¶ 76. However, this language is not in the NAE policy. Instead, the language that NAE relies upon to impose a contractual obligation on Menard appears in the Greenwich policy. *See* Doc. 1-1 at 95. But the NAE policy neither incorporates the Greenwich policy, nor references that policy beyond indicating its limits in the schedule of underlying coverage. *See* Doc. 1-2 at 28. In its response brief, NAE contends that the NAE policy explicitly required the conditions of the Greenwich policy to remain in place; however, this does not equate to incorporating the conditions of the Greenwich policy into the NAE policy to give NAE the rights it seeks. *See* Doc. 1-2 at 20 ("[T]he terms and conditions of 'scheduled underlying insurance' will not materially change during the 'policy period.'"). Greenwich's rights under the Greenwich policy do not flow to NAE. *See Archer-Daniels-Midland Co. v. Phoenix Assurance. Co. of N.Y.*, 975 F. Supp. 1129, 1136 (S.D. Ill. 1997) (explaining "the rights and obligations of the insured and the excess carriers are determined according to the Policy to which they are parties" and finding that a form attached to a primary policy had no effect on the excess coverage). That is, even if Menard agreed to maintain the Greenwich policy and its conditions for the duration of the NAE policy, it did not expressly agree that its obligations to Greenwich would also apply to NAE. Therefore, NAE's allegations contradict the language of the NAE policy, and the Court will not impose obligations on Menard for which there is no contractual basis.

In its response brief, NAE contends that the Court should read the NAE policy provision requiring Menard to "cooperate with [NAE] in the investigation or settlement of the claim or defense against the 'suit'" to infer a duty of good faith. Doc. 1-2 at 20. However, the complaint

7

makes no mention of a breach of this clause, and NAE does not allege that Menard failed to cooperate. Instead, NAE's allegations are focused on Menard's breach of an express good faith duty to settle. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) ("[A] plaintiff may not amend his complaint in his response brief."). Accordingly, the Court dismisses NAE's breach of contract claim to the extent it alleges an express breach. *See Bogie*, 705 F.3d at 609 ("When an exhibit contradicts the allegations in the complaint, ruling against the non-moving party on a motion to dismiss is consistent with our obligation to review all facts in the light most favorable to the non-moving party.")

### B. Implied Duty of Good Faith

Menard argues that the Court also cannot imply a duty of good faith to settle disputes for purposes of NAE's breach of contract claim because the implied duty is a gap filler and the parties contemplated settling suits against Menard. Under Illinois law, "a covenant of fair dealing and good faith is implied into every contract absent express disavowal." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *Foster Enter., Inc. v. Germania Fed. Sav. & Loan Ass'n*, 97 Ill. App. 3d 22 (1981)). To establish a breach of this duty, a plaintiff must show that the contract gave the defendant discretion in performing an obligation under the contract and the defendant exercised that discretion in bad faith, unreasonably, or in a manner inconsistent with the parties' reasonable expectations. *See LaSalle Bank Nat'l Ass'n v. Paramont Props.*, 588 F. Supp. 2d 840, 857 (N.D. Ill. 2008). "The purpose of this implied duty is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Nat'l Tech., Inc. v. Repcentric Sols.*, No. 13 C 1819, 2013 WL 6671796, at *3 (N.D. Ill. Dec. 18, 2013) (citation omitted). However, the

8

implied duty cannot override a contract's express terms. *F.D.I.C. v. Rayman*, 117 F.3d 994, 1000 (7th Cir. 1997) ("When the contract is silent, principles of good faith . . . fill the gap. They do not block use of terms that actually appear in the contract." (quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir. 1990))).

Here, the complaint alleges that the implied duty of good faith and fair dealing required Menard to act reasonably in settling suits and Menard breached this duty.[2] Although NAE's complaint does not explicitly allege that Menard exercised discretion in settling the underlying suit, when viewed in a light most favorable to NAE, its allegations support this reading. For instance, NAE claims it was Menard's decision alone to accept the demand, Doc. 1 ¶ 33, Menard did not inform NAE of the demand, *id.* ¶ 36, and NAE "encouraged" Menard to settle, *id.* ¶ 31. Additionally, NAE alleges that Menard acted in bad faith by refusing to settle. Therefore, NAE's allegations suggest that Menard breached the NAE policy based on an implied covenant of good faith and fair dealing.

Even so, Menard argues, because the NAE policy addresses the issue of settlement, the implied duty cannot supplant the NAE policy's language. Menard points to the NAE policy provision stating NAE had the "right . . . to participate in the defense of any 'suit,'" and if it assumed the defense, it would "settle the 'suit' as [NAE] deem[ed] expedient." Doc. 1-2 at 9. Menard contends that this language demonstrates that NAE had the right to participate in the settlement but chose not to do so. The Court disagrees that NAE's right to participate in defending a suit demonstrates that the parties contemplated settlement of suits. NAE's right to participate in the defense does not speak to the circumstances in which NAE elected not to

---

[2] NAE advances this theory in support of its breach of contract claim, but its response brief does not address why the Court should imply this duty as part of NAE's breach of contract claim. Instead, NAE discusses this implied duty as part of its common law duty to settle claim. Regardless, in this section, the Court will evaluate the implied duty as it relates to NAE's breach of contract claim because the complaint sets it forth as such.

participate and a settlement occurred. It cannot be that if NAE did not exercise its right to participate in the defense, NAE would be left with whatever settlement Menard struck. Therefore, the Court finds that the NAE policy includes a gap to be filled by the parties because it does not address settlement where NAE did not assume the defense of a suit. The Court cannot find an express term that it would modify by implying this duty. *See Cromeens, Holloman, Sibert, Inc v. AB Volvo*, 349 F.3d 376, 396 (7th Cir. 2003) ("[T]he duty of good faith and fair dealing cannot override an express term of a contract"). There is, perhaps, an argument that the NAE policy provision requiring Menard to "cooperate" with NAE in the settlement of a claim indicates that the parties contemplated NAE's rights with respect to settlement. Doc. 1-2 at 20. But again, the Court is not convinced that implying a duty of good faith will override the cooperation clause. Overall, viewed in the light most favorable to NAE as the non-moving party, the NAE policy does not demonstrate that the parties fully contemplated their rights in settling lawsuits and provided for this in the NAE policy. Thus, the Court finds it appropriate to imply a duty of good faith. Accordingly, the Court denies Menard's motion to dismiss NAE's breach of contract claim (Count II) insofar as NAE relies on an implied duty of good faith; however, the Court dismisses without prejudice NAE's breach of contract claim to the extent that it relies on the breach of an express duty.

## II.     Duty to Settle

Menard also moves for the Court to dismiss NAE's duty to settle claim because no Illinois court has recognized that a policyholder owes its excess carrier a duty to settle. Only a handful of courts across the country have addressed this issue, and all agree that no such duty exists. *See Emp'rs Mut. Cas. Co. v. Key Pharm., Inc.*, 871 F. Supp. 657, 665 (S.D.N.Y. 1994), *aff'd sub nom.* 75 F.3d 815 (2d Cir. 1996) (declining to recognize "a common-law duty giving

rise to a cause of action by an excess insurer against its policyholder for failure to settle a lawsuit below the threshold of the excess policy"); *Commercial Union Assurance Cos. v. Safeway Stores, Inc.*, 26 Cal. 3d 912, 921 (1980) ("[A] policy providing for excess insurance coverage imposes no implied duty upon the insured to accept a settlement offer which would avoid exposing the insurer to liability."); *Int'l Ins. Co. v. Dresser Indus., Inc.*, 841 S.W.2d 437, 445 (Tex. App. 1992) ("[W]e hold that a policy providing for excess insurance coverage imposes no duty upon the insured to accept a settlement offer that would avoid exposing the excess insurer to liability.").

Under Illinois law, an insurer has a duty to settle in good faith on behalf of its policyholder. *See Iowa Physicians' Clinic Med. Found. v. Physicians Ins. Co. of Wis.*, 547 F.3d 810, 812 (7th Cir. 2008) (citing *Haddick v. Valor Ins.*, 198 Ill. 2d 409 (2001); *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513 (1996)). This duty arises from the covenant of good faith and fair dealing and presents a narrow exception to Illinois courts' refusal to find that a breach of this contractual covenant gives rise to an independent tort. *See id*; *Voyles v. Sandia Mortg. Corp.*, 196 Ill. 2d 288, 296 (2001) ("In [*Cramer*], this court refused to recognize an independent action in tort for breach of an implied covenant of good faith and fair dealing, stating that the claim would be proper only in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policyholder." (citing *Cramer*, 174 Ill. 2d at 525)). Here, NAE argues that the duty to settle is reciprocal and therefore also flows from the policyholder to the insurer. Because Illinois courts have yet to address this issue, the Court must predict whether Illinois courts would recognize this duty by looking to relevant Illinois appellate case law and other state courts' decisions. *See Zenith Ins. Co. v. Emp'rs Ins. of Wausau*, 141 F.3d 300, 304 (7th Cir. 1998); *Brooks v. Chicago Downs Ass'n, Inc.*, 791 F.2d 512, 514 (7th Cir. 1986).

11

First, courts evaluating Illinois law have been reluctant to find that the duty to settle also applies to a primary insurer with respect to an excess carrier and disagree as to whether an excess carrier is owed this duty. *Compare Ill. Emcasco Ins. Co. v. Nationwide Mut. Ins. Co.*, 2015 IL App (1st) 140928-U, ¶ 72 (no duty to settle from primary to excess insurer), *U.S. Fire Ins. Co. v. Zurich Ins. Co.*, 329 Ill. App. 3d 987, 1003 (same), *and Liberty Mut. Ins. Co. v. Am. Home Assur. Co.*, 348 F. Supp. 2d 940, 964 (N.D. Ill. 2004) (no duty to settle between excess insurers), *with Cent. Ill. Pub. Serv. Co. v. Agric. Ins. Co.*, 378 Ill. App. 3d 728, 734 (2008) (lower-tiered excess insurer may owe duty to higher-tiered excess insurer), *and Schal Bovis, Inc. v. Cas. Ins. Co.*, 314 Ill. App. 3d 562, 571 (1999) (an excess insurer may bring cause of action against primary carrier). This gives the Court pause because NAE asks the Court to recognize a novel state law claim and Illinois courts' have not consistently extended this duty between other parties. *See Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 607 (7th Cir. 2000) ("Though district courts may try to determine how the state courts would rule on an unclear area of state law, district courts are encouraged to dismiss actions based on novel state law claims."). Courts imply the duty of good faith and fair dealing in insurance contracts to "combat [an insurer's] temptation to ignore an insured's interest and to make sure that the intent behind the insurance contract is upheld." *Iowa Physicians' Clinic Med. Found.*, 547 F.3d at 812. That purpose would not be served here. Nothing suggests that a policyholder would ignore an insurer's interests in rejecting a settlement demand, especially where the policyholder must first satisfy a settlement out of its self-insured retention. Moreover, a policyholder obtains excess insurance to have an additional layer of insulation against the risks of litigation. The object of the bargain is to protect the policyholder, and the policyholder pays a premium in case such protection is necessary. *See Safeway*, 26 Cal. 3d at 919 ("The insured owes no duty to defend or indemnify the excess carrier; hence, the

12

carrier can possess no reasonable expectation that the insured will accept a settlement offer as a means of 'protecting' the carrier from exposure. The protection of the insurer's pecuniary interests is simply not the object of the bargain."). Here, the parties intended that Menard and Greenwich would be responsible for a certain mount of liability, but NAE would provide additional coverage if necessary. By deciding not to settle, Menard also faced a possibility of owing certain amounts. *See id.* ("Where, as here, the policyholder is self-insured for an amount below the beginning of the excess insurance coverage, he is gambling as much with his own money as with that of the carrier. . . . [T]he excess carrier has no legitimate expectation that the insured will give at least as much consideration to the financial well-being of the insurance company as he does to his own interests." (internal quotation marks omitted)).

Additionally, Illinois law recognizes that primary insurers and excess carriers insure different risks. *Krusinski Constr. Co. v. Northbrook Prop. & Cas. Ins. Co.*, 326 Ill. App. 3d 210, 219 (2001) (citation omitted). Excess coverage is used after a predetermined amount of primary coverage has been diminished. *See id.* And "[r]ather than providing a duty to defend, most excess policies require the excess insurer to indemnify the insured for the costs of the defense as part of the 'ultimate net loss' against which the policy insures." *Id.* The purpose of excess insurance is for the policyholder to insure against liability in the event it decides to pursue the risk of litigation. *See Emp'rs Mut. Cas. Co.*, 871 F. Supp. at 666. Finding that a duty to settle extends from a policyholder to its excess carrier would undermine the purpose of this arrangement.

Relatedly, recognizing a tort cause of action by an excess carrier against its policyholder would expand the policyholder's duties and potential liability. *See id.* at 665 ("It is also clear that recognizing a tort cause of action by an excess carrier against its insured would substantially

13

increase the duty and potential liability of the insured."). And allowing an insurer to pursue a cause of action against a policyholder for failing to settle could result in future policyholders settling lawsuits even where they believe there is a likelihood of success on the merits, simply to avoid future liability. In other words, it would obligate a policyholder to settle an action if there was a chance that the verdict might reach the excess insurance. *See Dresser*, 841 S.W.2d at 444 ("[The excess carrier] seeks a ruling that would require an insured to settle any case, even one in which it believes liability is questionable or nonexistent, if there is any risk of a verdict impacting the excess layer of coverage."). The Court does not believe that Illinois courts would impose this burden on a policyholder. *Cf. Twin City Fire Ins. Co. v. Cty. Mut. Ins. Co.*, 23 F.3d 1175, 1180 (7th Cir. 1994) ("Do insurance companies need the protection of tort law against their own insureds and other insurance companies? We need not answer these questions.").[3]

Additionally, the Seventh Circuit has cautioned district courts against recognizing novel state law claims, especially when such claims would increase liability. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 636 (7th Cir. 2007) ("When given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should choose the narrower and more reasonable path (at least until the [state] Supreme Court tells us differently)." (quoting *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc))). Finding that a policyholder owes its insurer a duty to settle would expand Illinois law and impose new duties on policyholders. This would ultimately impact the relationship between a policyholder and insurer and weaken the Illinois Supreme Court's original purpose in recognizing an implied duty—to protect the rights of a policyholder. *Cramer*, 174 Ill. 2d at 525

---

[3] NAE relies on dicta in *Twin City* to support its argument that the Court should recognize a common law duty to settle. *See* Doc. 20 at 7–8. However, *Twin City* only evaluated whether the Illinois Supreme Court would find that a primary insurer owed a duty to protect an excess insurer and concluded that there is no direct duty. 23 F.3d at 1178, 1180–81. And subsequent cases from Illinois appellate courts provide more insight as to how Illinois courts would address the issue involved here.

("The duty was imposed to deal with the specific problem of claim settlement abuses by liability insurers where the policyholder has no contractual remedy.").

The Court cannot conclude that the Illinois Supreme Court would find that a policyholder owes its excess carrier a duty to settle. Accordingly, the Court dismisses NAE's duty to settle claim (Count III) with prejudice.

### III. Declaratory Relief

Finally, Menard moves to dismiss NAE's request for declaratory relief because it is duplicative of the other claims and based on the same faulty premises underlying those claims. NAE responds that the requested declaratory relief is not duplicative of its other claims because it will resolve whether NAE may be required to pay additional amounts of loss and determine Menard's rights under the policy.

Courts have discretion to decline to hear a claim for declaratory judgment. *See Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 747 (7th Cir. 1987). The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Courts often decline to exercise this discretion when the declaratory judgment claim substantially overlaps with the plaintiff's substantive claims. *See House of Brides, Inc. v. Alfred Angelo, Inc.*, 163 F. Supp. 3d 534, 547 (N.D. Ill. 2016); *Cohn v. Guaranteed Rate Inc.*, No. 14 C 9369, 2015 WL 5307625, at *5 (N.D. Ill. Sept. 10, 2015). Here, NAE raises the same substantive issues in its declaratory judgment claim as its breach of contract and duty to settle claims. In fact, NAE's basis for declaratory relief is a summary of these claims. *See* Doc. 1 ¶ 72. Both the breach of contract claim and declaratory judgment claim involve resolution of whether coverage exists thereby obligating NAE to pay amounts associated with the underlying suit. *Compare id.* ¶ 79 ("Because

of Menard's breach of contractual duties, NAE has been damaged[.]"), *with id.* ¶ 72 ("[T]he Insurers are entitled to a declaration that no coverage exists . . . [because] Menard breached its contractual duties[.]"). Because the substantive issues are duplicative, the Court declines to exercise jurisdiction over the declaratory judgment claim. *See Cohn*, 130 F. Supp. 3d at 1205–06 (N.D. Ill. 2015) (dismissing declaratory relief claim because it would require Court to decide substantive issues already presented by breach of contract claim); *Lansing v. Carroll*, 868 F. Supp. 2d 753, 764 (N.D. Ill. 2012) (dismissing a declaratory judgment claim because it failed to raise anything not raised in the breach of contract claim).

In its response brief, NAE argues that its declaratory relief claim is not duplicative because: (1) it involves whether NAE must pay other amounts of "loss" related to the underlying suit, including bills to Menard's counsel and vendors, and (2) it will determine Menard's rights under the policy. NAE contends that a judgment as to whether Menard is entitled to have its attorneys' fees reimbursed involves a determination of Menard's rights under the policy rather than whether Menard's conduct damaged NAE. NAE goes so far as to suggest that "[t]his case is most properly and fully analyzed a determination of whether Menard is entitled to benefits under the policy, not solely whether it breached the policy." Doc. 20 at 15. However, the complaint only includes one allegation that NAE may be obligated to pay a "loss" in the underlying suit. Doc. 1 ¶ 5. And the complaint says nothing about Menard's general entitlement to benefits under the policy. There is no plausible suggestion that NAE is entitled to relief on potential losses or that Menard's rights under the policy must be determined. Therefore, the argument that NAE puts forth in its response brief only correlates with allegations in the complaint that are speculative at best. This is insufficient to survive a motion to dismiss. *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) ("[T]he complaint must contain

'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief.") (quoting *Twombly*, 550 U.S. at 557)). The Court declines to exercise discretion over NAE's declaratory judgment claim and therefore dismisses this claim (Count I) without prejudice.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Menard's motion to dismiss [13]. The Court dismisses Count I without prejudice and Count III with prejudice. The Court dismisses Count II insofar as Menard asserts an express breach of contract claim, however, NAE may proceed with this claim to the extent that it claims Menard breached an implied duty.

Dated: September 30, 2020

SARA L. ELLIS
United States District Judge